UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TRACY EVANS,**

                                        Case No.

            Plaintiff,

v.                                   Hon.

**CANAL STREET BREWING CO., L.L.C.**
d/b/a **FOUNDERS BREWING COMPANY,**

            Defendant.
_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*
_____/

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

> There is no other civil action pending in
> this Honorable Court or any other Court
> arising out of the same transaction and
> occurrence.

      **NOW COMES** Plaintiff, **TRACY EVANS,** for his Complaint against Canal

Street Brewing Co., LLC, d/b/a Founders Brewing Company ("Founders"), stating the

following:

## INTRODUCTION

1.     Plaintiff Tracy Evans was employed with the Defendant Founders from 2014 until he was terminated in 2018, shortly after notifying his supervisor he planned to meet with Human Resources ("HR") to discuss Founder's racist work environment. On information and belief, Plaintiff was the first and only minority manager at Founders. To Plaintiff's dismay, his coworkers used racial slurs around him and with other employees.  In fact, the company itself named its printers in a blatantly racist fashion. Plaintiff complained to HR throughout his employment, but his complaints fell upon deaf ears.  It is Plaintiff's belief that he received unequal treatment throughout his employment and was denied a promotion due to his race.

In late 2017, Plaintiff sought new beginnings within the company by moving to its newly opening Detroit taproom. However, he realized the same practices of ignoring racially insensitive comments and unequal treatment made their way to the new facility as well.  After a few shockingly racist comments by a coworker and the company's failure to discipline the employee beyond a simple write-up, Plaintiff notified his supervisor he intended to meet with Human Resources to discuss his treatment and ongoing issues.  He was fired a few days later for pretextual reasons.

Within this Complaint, Plaintiff alleges that he received unequal treatment, was denied a promotion, and was ultimately terminated based on his race and in retaliation for complaints regarding his treatment in violation of his rights under 42 U.S.C. §2000

et seq., 42 U.S.C. § 1981, and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. Seq.*

## PARTIES

2.      Plaintiff Tracy Evans is an African-American individual who was employed with the Defendant and resides in Wayne County, Michigan.

3.      Defendant Canal Street Brewing Co., LLC, d/b/a Founders Brewing Company, is a limited liability corporation headquartered in Grand Rapids, Michigan. Founders' Detroit taproom is located at 456 Charlotte Street, Detroit, Wayne County, Michigan 48201.

## JURISDICITON AND VENUE

4.      This Court has original jurisdiction of Plaintiff's § 1981 claims pursuant to 28 U.S.C. § 1331.

5.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

6.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

7.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as a significant amount of the acts and omissions giving rise to this complaint occurred in Wayne County.

## GENERAL ALLEGATIONS

8.      Plaintiff Tracy Evans ("Plaintiff" or "Mr. Evans") is African-American and a member of a protected class based on his race.

9.      Plaintiff began working for Defendant Canal Street Brewing Co., LLC, d/b/a Founders Brewing Company ("Founders"), as a Packaging Machine Operator in 2014 in its Grand Rapids, Michigan facility.

10.     When Plaintiff first started at the production facility, Plaintiff was one of three total minorities out of more than seventy employees. Upon leaving, Plaintiff was one of an estimated seven minorities out of close to two-hundred employees.

11.     Within his first year, Plaintiff was promoted to an Assistant Shift Lead for the Production Department.  Plaintiff was the only minority of around eight total Assistant Shift Leads.

12.     During his employment, Plaintiff was subjected to disparate scrutiny and disciplinary practices when compared to his Caucasian comparators.

13.     In one instance, Plaintiff was written up for being 1-3 minutes late consistently.  However, his white coworkers were equally if not more frequently late.

14.     Around 2015, Plaintiff was appalled to find that Founders had electronically named its printers in a manner blatantly racist to African-Americans. Specifically, the facility's upstairs printer used by management employees was named

the "white guy printer" and the downstairs general employee printer was named "black guy printer."

15.    Plaintiff also was denied a promotion due to his race.  In late 2015, Plaintiff applied for a promotion as a Production Lead.  Plaintiff was one of three employees to apply for two openings.  The other two Caucasian individuals were ultimately promoted to the positions despite being trained directly by Plaintiff and being with the company for a shorter amount of time.  Additionally, these Caucasian individuals *each* had a recent terminable incident shortly before their promotions at a company party; one employee crashed his vehicle into a parked car while intoxicated and their other exposed his genitalia to the partygoers.  Although Plaintiff had no such incidents in his employment history, both individuals were selected for promotion over him.

16.    In October 2017, Plaintiff saw an opportunity for a change and applied for a lateral transfer as the Events and Promotions Manager in the newly-opening taproom in Detroit.

17.    Prior to moving to Detroit, Plaintiff was approached by a Caucasian employee who exclaimed "What's up with Detroit my nigger?"  Plaintiff immediately told the employee that it was not right for him to say that statement.  Plaintiff also reported the employee to Human Resources. However, the employee continued to work for Founders with Plaintiff.

18.     Shortly after, Plaintiff officially transferred to the Detroit taproom searching for fresh beginnings with the company.  However, similar racial incidents continued to occur in Detroit as well.

19.     In one incident, the employees were discussing ex-Detroit mayor Kwame Kilpatrick.  Following Plaintiff expressing his views, a Caucasian coworker looked at Plaintiff and said he needed to explain to Plaintiff what it meant to be the "head nigger in charge." Plaintiff immediately expressed his displeasure with the comment, to which the Caucasian coworker reaffirmed his statement.  Plaintiff immediately notified the General Manager Dominic Ryan ("GM Ryan") and a Human Resources employee, Marguex Bouwkamp, who was present.  The two stated that they were simply going to write the Caucasian employee up for the incident.  Plaintiff expressed his frustration with the company taking a blind eye to blatant racism against him and allowing an overtly racist culture. Plaintiff also stated that Founders should not allow this to happen. However, nothing was done beyond the write-up.

20.     Later, Plaintiff heard from other employees that the Caucasian employee was still making racist comments including but not limited to a complaint about how "dark" the taproom's cliental is.  The employee is still employed.

21.     Plaintiff suffered because of Founder's tolerance for a racist internal corporate culture.

22.     Further, the position itself was challenging as Plaintiff was expected to plan large scale projects without *any* budget whatsoever.  Additionally, in at least one instance, Plaintiff had planned an entire project and obtained the permits only to have the entire event moved to another location requiring completely different permits. Plaintiff was blamed for the delay despite the necessity of new permits.

23.     Following the continued racism, Plaintiff scheduled a personal day off on or around June 1, 2018 to drive to Grand Rapids, Michigan to speak with Founders Human Resources personnel about the incidents and his work environment.

24.     On May 31, 2018, the day prior to his scheduled day off, Plaintiff was called into GM Ryan's office to discuss an ongoing project that Plaintiff was working on.  GM Ryan urged Plaintiff to finish the project and questioned Plaintiff's choice to schedule a personal day on June 1, 2018.

25.     In response, Plaintiff explicitly explained that he scheduled the day off so that he could discuss his treatment due to his race and the racist incidents he had witnessed with Founders' Human Resources personnel in person.  Plaintiff also expressed his frustration that the company continued to employ the employee who had said the word "nigger" and continues to make other racist comments.  Plaintiff stated to GM Ryan that he did not feel comfortable working alongside the employee.

26.     GM Ryan reaffirmed that he needed something done on the project from Plaintiff *tomorrow* (the day Plaintiff explained that he planned to see HR).  As a result, Plaintiff postponed his scheduled day off for fear of retaliation.

27.     The following Monday, Plaintiff's *first* work day after his originally scheduled day off, Plaintiff was called into GM Ryan's office.  Upon entering, Plaintiff noticed Human Resources Director, Audrey Strieter ("Strieter"), was present.  Plaintiff assumed the purpose of the meeting was to discuss the complaints he had made to GM Ryan a few days earlier.  Instead, GM Ryan and Strieter informed Plaintiff that he was terminated and handed him a Separation Agreement, which Plaintiff refused to sign.

28.     As a result of Defendant's conduct, Plaintiff suffered substantial harm, including significant financial loss, embarrassment, stress, and frustration.

29.     In August 2018, Plaintiff filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission.  As of the date of this filing, Plaintiff has not been issued his right to sue pursuant to Title VII.  However, Plaintiff intends to amend this Complaint to add additional claims pursuant to Title VII mirroring those herein once the right to sue is issued.

## COUNT I
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981

30.     All preceding paragraphs are incorporated by reference.

31.     Plaintiff is a member of a protected minority class.

32.     As an employee, Plaintiff had a contractual employment relationship with Defendant Founders.

33.     Plaintiff was disciplined and terminated while performing at the same level as Caucasian comparators and allegedly engaging in the exact same conduct as Caucasian employees.

34.     Plaintiff alleges that he received disparate treatment compared to Caucasian comparators in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

35.     Plaintiff alleges that he was terminated in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

36.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## DENYING PROMOTION ON THE BASIS OF RACE - 42 U.S.C. § 1981

37.     All preceding paragraphs are incorporated by reference.

38.     During his employment with Defendant, Plaintiff applied for a promotion as a Production Lead, for which there were two openings.

39.     Defendant discriminated against Plaintiff on the basis of race by selecting two Caucasian employees over him with inferior skill sets, less seniority, and each had recently demonstrated egregious behavior not fitting of a manger.

40.     Plaintiff alleges that he was denied the promotion in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

41.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT III
## RETALIATION – 42 U.S.C. § 1981

42.     All preceding paragraphs are incorporated by reference.

43.     Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he complained of racial discrimination at various times throughout his employment.

44.     Defendant retaliated against Plaintiff after he reported and opposed Defendant's harboring of racism, acceptance of racism in the workplace, and racist conduct.

45.     Defendant's termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

46.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**COUNT IV**
**RACIAL DISCRIMINATION**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

47.     All preceding paragraphs are incorporated by reference.

48.     At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

49.     Defendant treated and disciplined Plaintiff differently than similarly-situated Caucasian employees.

50.     Plaintiff's race was a factor that made a difference in Defendant's decision with work assignments, treatment, and discipline to Plaintiff, including his termination.

51.     Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

52.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment,

mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## DENYING PROMOTION ON THE BASIS OF RACE
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

53.     All preceding paragraphs are incorporated by reference.

54.     During his employment with Defendant, Plaintiff applied for a promotion as a Production Lead for which there were two openings.

55.     Defendant discriminated against Plaintiff on the basis of race by selecting two Caucasian employees over him with inferior skill sets, less seniority, and each had recently demonstrated egregious behavior not fitting of a manger.

56.     Plaintiff alleges that he was denied the promotion in violation of his rights pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

57.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation,
and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

58.     All preceding paragraphs are incorporated by reference.

59.     Plaintiff engaged in protected activity when he opposed a racist worker environment, racist comments, and reported that the company kept a blind eye to racism and that he believed he was being treated unfairly and differently than his fellow white employees.

60.     As a result of Plaintiff's protected activity, Plaintiff was disciplined and, ultimately, terminated.

61.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.     Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of 42 U.S.C. § 1981 and the ELCRA;

b.     Award Plaintiff all lost wages and benefits, past and future, to which he is entitled;

c.      Award Plaintiff appropriate equitable relief;

d.      Award Plaintiff compensatory damages;

e.      Award Plaintiff exemplary damages;

f.      Award Plaintiff punitive damages;

g.      Award Plaintiff reasonable attorney fees, costs and interest; and

h.      Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 652-1906
jackwschulz@gmail.com
*Attorney for Plaintiff*

DATE: August 22, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TRACY EVANS,**

               Case No.

       Plaintiff,

v.                       Hon.

**CANAL STREET BREWING CO., L.L.C.**
d/b/a **FOUNDERS BREWING COMPANY,**

       Defendant.

_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*

_____/

## DEMAND FOR TRIAL BY JURY

Plaintiff Tracy Evans hereby demands for a trial by jury.

               Respectfully submitted,

               By: /s/ Jack W. Schulz
               Jack W. Schulz (P78078)
               SCHULZ GOTHAM PLC
               PO Box 44855
               Detroit, MI 48244
               (313) 652-1906
               jackwschulz@gmail.com
               *Attorney for Plaintiff*

DATE: August 22, 2018