UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TRACY EVANS,**

Case No.  2:18-cv-12631

Plaintiff,

v.

Hon. Paul D. Borman

**CANAL STREET BREWING CO., L.L.C.**
d/b/a **FOUNDERS BREWING COMPANY,**

Defendant.

_____

| | |
|---|---|
| Jack W. Schulz (P78078) | Michael E. Stroster (P58982) |
| SCHULZ GOTHAM PLC | Patrick M. Edsenga (P74593) |
| Attorneys for Plaintiff | MILLER JOHNSON |
| P.O. Box 44855 | Attorneys for Defendant |
| Detroit, MI  48244 | 45 Ottawa Avenue, S.W., Suite 1100 |
| (313) 246-3590 | P.O. Box 306 |
| jackwschulz@gmail.com | Grand Rapids, MI  49501-0306 |
| | (616) 831-1700 |
| | strosterm@millerjohnson.com |
| | edsengap@millerjohnson.com |

_____

**DEFENDANT'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant Canal Street Brewing Co., LLC, d/b/a Founders Brewing Company, by its attorneys, Miller Johnson, answers Plaintiff's Complaint as follows:

INTRODUCTION

1.      Plaintiff Tracy Evans was employed with the Defendant Founders from 2014 until he was terminated in 2018, shortly after notifying his supervisor he planned to meet with Human Resources ("HR") to discuss Founder's racist work environment.  On information and belief, Plaintiff was the first and only minority manager at Founders.  To Plaintiff's dismay,

his coworkers used racial slurs around him and with other employees.  In fact, the company itself named its printers in a blatantly racist fashion. Plaintiff complained to HR throughout his employment, but his complaints fell upon deaf ears.  It is Plaintiff's belief that he received unequal treatment throughout his employment and was denied a promotion due to his race.

In late 2017, Plaintiff sought new beginnings within the company by moving to its newly opening Detroit taproom.  However, he realized the same practices of ignoring racially insensitive comments and unequal treatment made their way to the new facility as well.  After a few shockingly racist comments by a coworker and the company's failure to discipline the employee beyond a simple write-up, Plaintiff notified his supervisor he intended to meet with Human Resources to discuss his treatment and ongoing issues.  He was fired a few days later for pretextual reasons.

Within this Complaint, Plaintiff alleges that he received unequal treatment, was denied a promotion, and was ultimately terminated based on his race and in retaliation for complaints regarding his treatment in violation of his rights under 42 U.S.C. §2000 et seq., 42 U.S.C. § 1981, and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. Seq.*

**ANSWER:    Paragraph 1 of the Complaint is introductory in nature, to which no response is required.  To the extent a response is required, Defendant refers to its answers to the allegations in Paragraphs 2 – 61 contained herein.  Defendant further admits that Plaintiff purports to bring claims against it for violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larson Civil Rights Act, MCL 37.20101, *et seq.* but denies any and all liability with respect to Plaintiff's claims, and denies that Plaintiff is entitled to recovery, in any amount and in any form.   Defendant denies the remaining allegations in paragraph 1 of the Complaint.**

PARTIES

2.       Plaintiff Tracy Evans is an African-American individual who was employed with the Defendant and resides in Wayne County, Michigan.

**ANSWER:    Defendant admits it employed Plaintiff in various positions from November 2013 through June 2018.   Defendant further admits upon information and belief that Plaintiff is an African-American individual.   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.**

3.       Defendant Canal Street Brewing Co., LLC, d/b/a Founders Brewing Company, is a limited liability corporation headquartered in Grand Rapids, Michigan.  Founders' Detroit taproom is located at 456 Charlotte Street, Detroit, Wayne County, Michigan 48201.

**ANSWER:    Defendant admits the allegations in Paragraph 3.**

JURISDICTION AND VENUE

4.       This Court has original jurisdiction of Plaintiff's § 1981 claims pursuant to 28 U.S.C. § 1331.

**ANSWER:    Defendant denies that its actions support any claim asserted by Plaintiff in this Complaint, but Defendant does not dispute that the Court has jurisdiction over Plaintiff's Section 1981 claims.**

5.       The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

**ANSWER:    Defendant denies that any amount is legitimately in controversy, but Defendant does not dispute that this Court has jurisdiction over this action.**

3

6. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**ANSWER:   Defendant denies that its actions support any claim asserted by Plaintiff in this Complaint, but Defendant does not dispute that the Court has jurisdiction over Plaintiff's state law claims.**

7. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as a significant amount of the acts and omissions giving rise to this complaint occurred in Wayne County.

**ANSWER:   Defendant denies that it engaged in any acts or omissions that gave rise to a legitimate cause of action in Wayne County, but Defendant does not dispute that venue is proper in this action.**

GENERAL ALLEGATIONS

8. Plaintiff Tracy Evans ("Plaintiff" or "Mr. Evans") is African-American and a member of a protected class based on his race.

**ANSWER:   Defendant admits the allegations in Paragraph 8 upon information and belief.**

9. Plaintiff began working for Defendant Canal Street Brewing Co., LLC, d/b/a Founders Brewing Company ("Founders"), as a Packaging Machine Operator in 2014 in its Grand Rapids, Michigan facility.

**ANSWER:   Defendant admits that it hired Plaintiff as a Packaging Machine Operator at its facility in Grand Rapids, Michigan on November 4, 2013.  Defendant denies all remaining allegations in Paragraph 9 because they are untrue.**

10.     When Plaintiff first started at the production facility, Plaintiff was one of three total minorities out of more than seventy employees.  Upon leaving, Plaintiff was one of an estimated seven minorities out of close to two-hundred employees.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.**

11.     Within his first year, Plaintiff was promoted to an Assistant Shift Lead for the Production Department.  Plaintiff was the only minority of around eight total Assistant Shift Leads.

**ANSWER:     Defendant denies that Plaintiff was promoted to Assistant Shift Lead "within his first year."  Defendant also denies that there were "around eight total Assistant Shift Leads."  In further answer, Defendant promoted Plaintiff to second shift Assistant Shift Lead on November 30, 2014, and Plaintiff was in one of five Assistant Shift Lead positions in the Production Department at that time.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was the only minority Assistant Shift Lead.**

12.     During his employment, Plaintiff was subjected to disparate scrutiny and disciplinary practices when compared to his Caucasian comparators.

**ANSWER:     Defendant denies the allegations in Paragraph 12 because they are untrue.**

13.     In one instance, Plaintiff was written up for being 1-3 minutes late consistently.  However, his white coworkers were equally if not more frequently late.

**ANSWER:     Defendant admits that Plaintiff received a verbal warning on May 5, 2014 for tardiness.  In further answer, Plaintiff received a verbal warning on May 5 because he was**

late for 26 of his previous 53 scheduled shifts and, on average, was six minutes late for those shifts.  Defendant denies the remaining allegations in Paragraph 13 because they are untrue.

14.     Around 2015, Plaintiff was appalled to find that Founders had electronically named its printers in a manner blatantly racist to African-Americans.  Specifically, the facility's upstairs printer used by management employees was named the "white guy printer" and the downstairs general employee printer was named "black guy printer."

**ANSWER:**     **Defendant denies the allegations in Paragraph 14 because they are untrue.**

15.     Plaintiff also was denied a promotion due to his race.  In late 2015, Plaintiff applied for a promotion as a Production Lead.  Plaintiff was one of three employees to apply for two openings.  The other two Caucasian individuals were ultimately promoted to the positions despite being trained directly by Plaintiff and being with the company for a shorter amount of time.  Additionally, these Caucasian individuals *each* had a recent terminable incident shortly before their promotions at a company party; one employee crashed his vehicle into a parked car while intoxicated and the other exposed his genitalia to the partygoers.  Although Plaintiff had no such incidents in his employment history, both individuals were selected for promotion over him.

**ANSWER:**     **Defendant admits that Plaintiff applied for the position of Production Lead in October 2016 and that, at that time, there was only one opening for a Production Lead but that another Production Lead position opened up a short time later.  Defendant admits that Plaintiff was one of three Assistant Shift Leads to apply for this position, and that the other two Assistant Shift Leads were selected for the position.  Upon information and belief, Defendant admits that the two Assistant Shift Leads selected for the Production Lead positions were Caucasian and that those individuals began employment at Defendant a short**

time after Plaintiff.  **Defendant denies the remaining allegations in Paragraph 15 because they are untrue.**

16.     In October 2017, Plaintiff saw an opportunity for a change and applied for a lateral transfer as the Events and Promotions Manager in the newly-opening taproom in Detroit.

**ANSWER:**     **Defendant admits that in August 2017 Plaintiff applied for a promotion to Events and Promotions Manager for its soon-to-be-opened Detroit taproom.  Defendant denies the remaining allegations in Paragraph 16 because they are untrue.**

17.     Prior to moving to Detroit, Plaintiff was approached by a Caucasian employee who exclaimed "What's up with Detroit my nigger?"  Plaintiff immediately told the employee that it was not right for him to say that statement.  Plaintiff also reported the employee to Human Resources.  However, the employee continued to work for Founders with Plaintiff.

**ANSWER:**     **Defendant admits that Plaintiff voiced a complaint to its Human Resources Department in September 2017 that a co-worker, who continues to work for Defendant, approached him and made the comment alleged in Paragraph 17.  In further answer, upon receiving this report, Defendant's Human Resources Representative spoke with Plaintiff and told Plaintiff that she would investigate the allegation and that the offending employee would face disciplinary action if the allegation was substantiated.  Plaintiff responded that he did not want the offending employee to be fired and preferred to have a conversation with the offending employee about the comment.  Defendant's Human Resources Representative then investigated Plaintiff's complaint and took prompt remedial measures to cause this conduct to cease, including issuing a disciplinary action to Plaintiff's co-worker.  Upon information and belief, Plaintiff and the offending co-worker met and the offending co-worker apologized**

to Plaintiff and Plaintiff accepted his apology.  Defendant denies all remaining allegations in Paragraph 17.

18.     Shortly after, Plaintiff officially transferred to the Detroit taproom searching for fresh beginnings with the company. However, similar racial incidents continued to occur in Detroit as well.

**ANSWER:     Defendant admits that Plaintiff accepted a promotion to become the Events and Promotions Manager at Defendant's soon-to-be-opened Detroit taproom beginning in October 2017.  In further answer, Defendant selected Plaintiff for this promotion out of 294 applicants for the position.  Defendant denies that Plaintiff took this promotion because he was "searching for fresh beginnings."   Defendant denies all remaining allegations in Paragraph 18 because they are untrue.**

19.     In one incident, the employees were discussing ex-Detroit mayor Kwame Kilpatrick.  Following Plaintiff expressing his views, a Caucasian coworker looked at Plaintiff and said he needed to explain to Plaintiff what it meant to be the "head nigger in charge."  Plaintiff immediately expressed his displeasure with the comment, to which the Caucasian coworker reaffirmed his statement.  Plaintiff immediately notified the General Manager Dominic Ryan ("GM Ryan") and a Human Resources employee, Marguex Bouwkamp, who was present.  The two stated that they were simply going to write the Caucasian employee up for the incident. Plaintiff expressed his frustration with the company taking a blind eye to blatant racism against him and allowing an overtly racist culture.  Plaintiff also stated that Founders should not allow this to happen.  However, nothing was done beyond the write-up.

**ANSWER:     Defendant admits that Plaintiff reported that a co-worker made a comment similar to the one alleged in Paragraph 19 to General Manager Dominic Ryan and Human**

**Resources representative Marguex Bouwkamp.  Defendant admits that Mr. Ryan and Ms. Bouwkamp told Plaintiff they would investigate his complaint, discuss the appropriate disciplinary action for the offending employee after completing their investigation, and follow up with Plaintiff.  After completing its investigation, Defendant admits that Ms. Bouwkamp and Mr. Ryan took prompt remedial action, including issuing a written disciplinary warning to the offending employee and informing that employee that additional actions of this nature could result in termination of his employment.  Defendant denies that Ms. Bouwkamp and Mr. Ryan told Plaintiff that they would "simply" write up the offending co-worker.  Defendant denies that Plaintiff "expressed his frustration with the company taking a blind eye to blatant racism against him and allowing an overtly racist culture" or that Plaintiff "stated that [Defendant] should not allow this to happen."  Defendant also denies that "nothing was done beyond the write up."  Defendant denies all remaining allegations in Paragraph 19 because they are untrue.**

20.     Later, Plaintiff heard from other employees that the Caucasian employee was still making racist comments including but not limited to a complaint about how "dark" the taproom's cliental is.  The employee is still employed.

**ANSWER:     Defendant denies that the employee referenced in Paragraph 19 remains employed by Defendant.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 20.**

21.     Plaintiff suffered because of Founder's tolerance for a racist internal corporate culture.

**ANSWER:     Defendant denies the allegation in Paragraph 21 because it is untrue.**

22.     Further, the position itself was challenging as Plaintiff was expected to plan large scale projects without *any* budget whatsoever.  Additionally, in at least one instance, Plaintiff had planned an entire project and obtained the permits only to have the entire event moved to another location requiring completely different permits.  Plaintiff was blamed for the delay despite the necessity of new permits.

**ANSWER:     Defendant denies the allegations in Paragraph 22 because they are untrue.**

23.     Following the continued racism, Plaintiff scheduled a personal day off on or around June 1, 2018 to drive to Grand Rapids, Michigan to speak with Founders Human Resources personnel about the incidents and his work environment.

**ANSWER:     Defendant denies the allegations in Paragraph 23 because they are untrue.**

24.     On May 31, 2018, the day prior to his scheduled day off, Plaintiff was called into GM Ryan's office to discuss an ongoing project that Plaintiff was working on.  GM Ryan urged Plaintiff to finish the project and questioned Plaintiff's choice to schedule a personal day on June 1, 2018.

**ANSWER:     Defendant admits that on May 31, 2018, General Manager Dominic Ryan told Plaintiff that he needed to provide an event proposal for an event that Plaintiff was attempting to gain Defendant's approval to hold at Defendant's Detroit Taproom.  In further answer, prior to May 31, Plaintiff had repeatedly failed to submit a complete budget or provide other necessary information in the event proposal that Defendant needed to evaluate and approve the proposed event, despite Defendant's repeated directions that Plaintiff must submit a completed event proposal.  For instance, on May 22, 2018, General Manager Dominic Ryan told Plaintiff that the event proposal he submitted was incomplete and lacking key information and that Plaintiff must submit a complete event proposal by May 25, 2018.**

**Plaintiff, however, did not submit the budget proposal on May 25 as required, so Mr. Ryan gave Plaintiff until May 31, 2018 to submit the complete event proposal.  Plaintiff also failed to meet that May 31 deadline so Mr. Ryan gave Plaintiff yet another extension until June 1 to provide a complete event proposal, but Plaintiff failed to meet this deadline with a complete event proposal.  Defendant denies the remaining allegations in Paragraph 24 because they are untrue.**

25.     In response, Plaintiff explicitly explained that he scheduled the day off so that he could discuss his treatment due to his race and the racist incidents he had witnessed with Founders' Human Resources personnel in person.  Plaintiff also expressed his frustration that the company continued to employ the employee who had said the word "nigger" and continues to make other racist comments.  Plaintiff stated to GM Ryan that he did not feel comfortable working alongside the employee.

**ANSWER:     Defendant denies the allegations in Paragraph 25 because they are untrue.**

26.     GM Ryan reaffirmed that he needed something done on the project from Plaintiff tomorrow (the day Plaintiff explained that he planned to see HR).  As a result, Plaintiff postponed his scheduled day off for fear of retaliation.

**ANSWER:     Defendant admits that on May 31, 2018, GM Ryan gave Plaintiff an additional day to complete his already-late event proposal.  Defendant denies the remaining allegations in Paragraph 26 because they are untrue.**

27.     The following Monday, Plaintiff's first work day after his originally scheduled day off, Plaintiff was called into GM Ryan's office.  Upon entering, Plaintiff noticed Human Resources Director, Audrey Strieter ("Strieter"), was present. Plaintiff assumed the purpose of the meeting was to discuss the complaints he had made to GM Ryan a few days earlier.

Instead, GM Ryan and Strieter informed Plaintiff that he was terminated and handed him a Separation Agreement, which Plaintiff refused to sign.

**ANSWER:** **Defendant denies that Plaintiff met with General Manager Dominic Ryan and Defendant's Human Resources Director Audrey Strieter on Monday, June 4, 2018, as Plaintiff did not work that day. In further answer, this meeting occurred on Tuesday, June 5, 2018 in Mr. Ryan's office at the Defendant's Detroit taproom. Defendant admits that Mr. Ryan and Ms. Strieter informed Plaintiff that his employment was being terminated effective immediately and offered Plaintiff the opportunity to receive severance pay by executing a separation agreement, which Plaintiff later declined. Defendant is without knowledge or information sufficient to form a belief as to what Plaintiff "assumed" this meeting was about. Defendant denies the remaining allegations in Paragraph 27 because they are untrue.**

28.     As a result of Defendant's conduct, Plaintiff suffered substantial harm, including significant financial loss, embarrassment, stress, and frustration.

**ANSWER:** **Defendant denies the allegations in Paragraph 28 because they are untrue.**

29.     In August 2018, Plaintiff filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission. As of the date of this filing, Plaintiff has not been issued his right to sue pursuant to Title VII. However, Plaintiff intends to amend this Complaint to add additional claims pursuant to Title VII mirroring those herein once the right to sue is issued.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29.**

COUNT I
<u>RACIAL DISCRIMINATION - 42 U.S.C. § 1981</u>

30.    All preceding paragraphs are incorporated by reference.

**<u>ANSWER:</u>    Defendant reincorporates by reference its responses to the allegations in all preceding paragraphs.**

31.    Plaintiff is a member of a protected minority class.

**<u>ANSWER:</u>    Admitted upon information and belief.**

32.    As an employee, Plaintiff had a contractual employment relationship with Defendant Founders.

**<u>ANSWER:</u>    Paragraph 32 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendant admits the allegation in Paragraph 32.**

33.    Plaintiff was disciplined and terminated while performing at the same level as Caucasian comparators and allegedly engaging in the exact same conduct as Caucasian employees.

**<u>ANSWER:</u>    Defendant denies the allegations in Paragraph 33 because they are untrue.**

34.    Plaintiff alleges that he received disparate treatment compared to Caucasian comparators in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

**<u>ANSWER:</u>    Defendant denies the allegations in Paragraph 34 because they are untrue.**

35.    Plaintiff alleges that he was terminated in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

**<u>ANSWER:</u>    Defendant denies the allegations in Paragraph 35 because they are untrue.**

36.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and

sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**ANSWER:** **Defendant denies the allegations in Paragraph 36 because they are untrue.**

COUNT II
DENYING PROMOTION ON THE BASIS OF RACE - 42 U.S.C. § 1981

37.     All preceding paragraphs are incorporated by reference.

**ANSWER:** **Defendant reincorporates by reference its responses to the allegations in all preceding paragraphs.**

38.     During his employment with Defendant, Plaintiff applied for a promotion as a Production Lead, for which there were two openings.

**ANSWER:** **Defendant admits that Plaintiff applied for the position of Production Lead in October 2016 and that initially there was one opening for a Production Lead but that another Production Lead position opened up a short time later.  Defendant denies all remaining allegations in Paragraph 38 because they are untrue.**

39.     Defendant discriminated against Plaintiff on the basis of race by selecting two Caucasian employees over him with inferior skill sets, less seniority, and each had recently demonstrated egregious behavior not fitting of a manger.

**ANSWER:** **Defendant denies the allegations in Paragraph 39 because they are untrue.**

40.     Plaintiff alleges that he was denied the promotion in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

**ANSWER:** **Defendant denies the allegations in Paragraph 40 because they are untrue.**

41.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and

sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**ANSWER:**   **Defendant denies the allegations in Paragraph 41 because they are untrue.**

COUNT III
RETALIATION – 42 U.S.C. § 1981

42.   All preceding paragraphs are incorporated by reference.

**ANSWER:**   **Defendant reincorporates by reference its responses to the allegations in all preceding paragraphs.**

43.   Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he complained of racial discrimination at various times throughout his employment.

**ANSWER:**   **Paragraph 43 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendant admits the allegation in Paragraph 43.**

44.   Defendant retaliated against Plaintiff after he reported and opposed Defendant's harboring of racism, acceptance of racism in the workplace, and racist conduct.

**ANSWER:**   **Defendant denies the allegations in Paragraph 44 because they are untrue.**

45.   Defendant's termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

**ANSWER:**   **Defendant denies the allegations in Paragraph 45 because they are untrue.**

46.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and

emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**ANSWER:**   **Defendant denies the allegations in Paragraph 46 because they are untrue.**

COUNT IV
RACIAL DISCRIMINATION
ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

47.   All preceding paragraphs are incorporated by reference.

**ANSWER:**   **Defendant reincorporates by reference its responses to the allegations in all preceding paragraphs.**

48.   At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

**ANSWER:**   **Paragraph 48 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendant admits the allegation in Paragraph 48.**

49.   Defendant treated and disciplined Plaintiff differently than similarly-situated Caucasian employees.

**ANSWER:**   **Defendant denies the allegations in Paragraph 49 because they are untrue.**

50.   Plaintiff's race was a factor that made a difference in Defendant's decision with work assignments, treatment, and discipline to Plaintiff, including his termination.

**ANSWER:**   **Defendant denies the allegations in Paragraph 50 because they are untrue.**

51.   Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

**ANSWER:**   **Defendant denies the allegations in Paragraph 51 because they are untrue.**

52.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and

16

sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:     Defendant denies the allegations in Paragraph 52 because they are untrue.**

COUNT V
DENYING PROMOTION ON THE BASIS OF RACE
ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

53.     All preceding paragraphs are incorporated by reference.

**ANSWER:     Defendant reincorporates by reference its responses to the allegations in all preceding paragraphs.**

54.     During his employment with Defendant, Plaintiff applied for a promotion as a Production Lead for which there were two openings.

**ANSWER:     Defendant admits that Plaintiff applied for the position of Production Lead in October 2016 and that initially there was one opening for a Production Lead but that another Production Lead position opened up a short time later.  Defendant denies all remaining allegations in Paragraph 54 because they are untrue.**

55.     Defendant discriminated against Plaintiff on the basis of race by selecting two Caucasian employees over him with inferior skill sets, less seniority, and each had recently demonstrated egregious behavior not fitting of a manger.

**ANSWER:     Defendant denies the allegations in Paragraph 55 because they are untrue.**

56.     Plaintiff alleges that he was denied the promotion in violation of his rights pursuant to the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

**ANSWER:     Defendant denies the allegations in Paragraph 56 because they are untrue.**

57.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:     Defendant denies the allegations in Paragraph 57 because they are untrue.**

COUNT VI
RETALIATION
ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

58.     All preceding paragraphs are incorporated by reference.

**ANSWER:     Defendant reincorporates by reference its responses to the allegations in all preceding paragraphs.**

59.     Plaintiff engaged in protected activity when he opposed a racist worker environment, racist comments, and reported that the company kept a blind eye to racism and that he believed he was being treated unfairly and differently than his fellow white employees.

**ANSWER:     Paragraph 59 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendant admits that Plaintiff engaged in protected activity by reporting racist comments but denies that Plaintiff "reported that the company kept a blind eye to racism and that he believed he was being treated unfairly and differently than his fellow white employees."  Defendant denies all remaining allegations in Paragraph 59 because they are untrue.**

60.     As a result of Plaintiff's protected activity, Plaintiff was disciplined and, ultimately, terminated.

**ANSWER:**     **Defendant denies the allegations in Paragraph 60 because they are untrue.**

61.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**     **Defendant denies the allegations in Paragraph 61 because they are untrue.**

## JURY DEMAND

Defendants object to trial by jury except as to those claims so triable and for which Plaintiff has made a timely demand for jury trial.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.     Except for Plaintiff's claims for retaliatory and/or discriminatory termination of employment, Plaintiff's claims are barred by the 180-day contractual period of limitations contained in the contract that Plaintiff entered into with Defendant, which is attached as Exhibit A to Defendant's Amended Answer.

3.     Any actions undertaken by Defendant regarding Plaintiff were taken for lawful and legitimate, non-discriminatory, and non-retaliatory business reasons.

4.     Plaintiff's claims, in whole or in part, are barred because of laches, waiver, and/or Plaintiff's unclean hands.

5.      Plaintiff cannot establish a prima facie case or discrimination or retaliation.

6.      Plaintiff cannot establish that Defendant's legitimate, non-discriminatory and non-retaliatory reasons for its actions regarding Plaintiff were pretext for unlawful discrimination or retaliation.

7.      Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and/or are otherwise untimely.

8.      Plaintiff's claims are barred, in whole or in part, to the extent that he failed to satisfy the jurisdictional requirements, failed to exhaust administrative remedies or failed to satisfy other conditions precedent to bringing suit.

9.      Plaintiff's claim for damages and monetary relief are barred because Plaintiff failed to mitigate his damages.

10.     Defendant is entitled to a set-off against Plaintiff's claim for damages in the amount(s) that Plaintiff has earned through subsequent employment or benefits.

11.     During all relevant times, Defendant had in place effective policies and procedures to prevent and correct discrimination, harassment, and retaliation in the workplace; any actions contrary to these policies and procedures were contrary to Defendant's good faith efforts to comply with the anti-discrimination laws, and done without Defendant's consent or authorization.

12.     Plaintiff failed to avail himself of the preventative and/or corrective procedures provided by Defendant to address any alleged discriminatory, harassing, or retaliatory behavior directed at Plaintiff.

13.     To the extent it is discovered that Plaintiff engaged in misconduct, violation of Defendant's policies, or other conduct that would have resulted in her termination by Defendant,

or would have precluded Plaintiff rom obtaining employment with Defendant, Plaintiff is subject to the after-acquired evidence doctrine and limited in his recovery of remedy.

14.     To the extent that Plaintiff seeks an award of punitive damages and/or liquidated damages, such damages are unavailable under applicable law and/or are barred based on Defendants' good faith efforts to comply with the law.

15.     Plaintiff's claims are subject to a mandatory arbitration clause in the contract Plaintiff entered into with Defendant attached as Exhibit A to Defendant's Amended Answer.

16.     Defendant denies all other allegations in the Complaint not specifically admitted or otherwise responded to in this Amended Answer.

17.     Defendant reserves the right to amend or add additional affirmative defenses or counterclaims that may become known during the course of discovery.

WHEREFORE, Defendant respectfully requests that this Court enter judgment in its favor, dismissing the Complaint in its entirety with prejudice, and awarding Defendant its costs of suit and reasonable attorneys' fees, and awarding such other legal and/or equitable relief as the Court deems just and proper.

Respectfully submitted,

MILLER JOHNSON
Attorneys for Defendant


Dated:  October 8, 2018                    By:  */s/ Patrick M. Edsenga*
                                           Patrick Edsenga (P74593)
                                           45 Ottawa Avenue, S.W., Suite 1100
                                           PO Box 306
                                           Grand Rapids, MI 49501
                                           (616) 831-1713