UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY EVANS,

        Plaintiff,

v.

CANAL STREET BREWING CO. LLC, d/b/a FOUNDERS BREWING COMPANY,

        Defendant.
_____/

Case No. 18-cv-12631

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
Magistrate Judge

## OPINION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF #21)

### I.    BACKGROUND

On August 22, 2018, Plaintiff Tracy Evans, an African-American male previously employed by Defendant Canal Street Brewing Co., LLC, d/b/a Founders Street Brewing Co. ("Founders"), filed a six-count Complaint (ECF #1) against Founders, alleging race discrimination, failure to promote, and retaliation under 42 USC §1981, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §37.2101, *et seq.* On October 1, 2018, Plaintiff received a Notice of Right to Sue from the U.S. Equal Opportunity and Human Rights Commission ("EEOC"). On October 12, 2018, Plaintiff filed an eight-count First Amended Complaint (ECF #10), to include two counts under Title VII, 42 USC §2000e, for race discrimination and retaliation, as follows:

1

Count I:      Racial Discrimination – 42 USC §1981
Count II:     Denying Promotion on the Basis of Race – 42 USC §1981
Count III:    Retaliation – 42 USC §1981
Count IV:     Racial Discrimination – ELCRA, MCL §37.2101 *et seq.*
Count V:      Denying Promotion on the Basis of Race – ELCRA, MCL §37.2101 *et seq.*
Count VI:     Retaliation – ELCRA, MCL 37.2101 *et seq.*
Count VII:    Racial Discrimination – Title VII, 42 USC §2000e
Count VIII:   Retaliation – Title VII, 42 USC §2000e

Before the Court is Defendant's Amended Motion for Partial Summary Judgment (ECF #21) seeking dismissal of portions of Plaintiff's Amended Complaint on the grounds that his claims are predominantly barred by a contractual period of limitations within the Confidentiality Agreement that Plaintiff executed before he commenced his employment with Founders. (Def.'s Am. Mot. Nov. 20, 2018, ECF #21, PgID 214.) Defendants do not seek dismissal of Plaintiff's claims for discriminatory and/or retaliatory termination under ELCRA, Section 1981, and Title VII or other discriminatory and/or retaliatory conduct occurring after February 23, 2018 under ELCRA and Section 1981.

On October 22, 2018, Founders answered the Amended Complaint. (ECF #13.) On November 30, 2018, Founders filed the instant Motion for Partial Summary Judgment. (ECF #15.) On December 21, 2018, Plaintiff filed his Response (ECF #17), and on January 3, 2019, Founders filed its Reply in support of its Motion (ECF #18). Defendant filed an Amended Motion for Partial Summary Judgment on March 12, 2019 to comply with rules regarding font size. (ECF #21.) The Court held a hearing on Defendant's Motion on March 29, 2019.

## II. FACTS

Plaintiff, an African-American male, began his employment with Founders on November 4, 2013 as a Packaging Machine Operator at its Grand Rapids, Michigan facility. (Am. Compl. ECF #10, PgID 76, ¶9; Def.'s Am. Mot. ECF #21, PgID 214.) On October 29, 2013, six days before beginning his employment, Plaintiff signed a Confidentiality Agreement ("Agreement") with Founders, which contained, on Page One, the following "Limitation on Claims:"

> By accepting or continuing employment at the Company, you agree that any action or suit arising out of your employment or termination of employment, including but not limited to, claims arising under state , federal or local statutes or ordinances, must be brought within the following time periods: (a) for lawsuits requiring a Notice of Right to Sue from the EEOC, within 90 days after the EEOC issues that Notice; or (b) for all other lawsuits, (i) within 180 days of the event(s) giving rise to the claim, or (ii) the time limits specified by statute, whichever is shorter. I waive any statutes of limitation that exceed this time limit.

(Answer to Am. Compl., Oct. 22, 2018, ECF #13-1, Ex. A, PgID 118.) An applicant's signed document was a condition precedent to employment at Founders.

During Plaintiff's tenure at the Grand Rapids facility, he claims that he was subject to intentionally discriminatory acts, such as receiving harsher discipline than his white co-workers for tardiness. (Am. Compl., ECF #10, PgID 76, ¶13.) In 2015, Plaintiff discovered that the upstairs and downstairs office printers were differentiated with discriminatory names ("white guy printer" and "black guy printer"). (*Id.* at PgID 76, ¶14.)

Also in 2015, Plaintiff claims that two white co-workers were chosen over Plaintiff for promotion to Production Lead, despite the fact they had not been at Founders as long as Plaintiff, and both white employees had committed "terminable" offenses prior to their promotions. (*Id.* at PgID 77, ¶15.)

In October 2017, Plaintiff applied for and received a "lateral" transfer to become "Events and Promotions Manager" in the newly-opening taproom in Detroit, Michigan ("Taproom"). Before he moved to Detroit, a Grand Rapids employee allegedly stated to Plaintiff, "What's up with Detroit my n*****?" Plaintiff complained to the employee and to Defendant's human resources department, which did not terminate that employee. (*Id.* at PgID 77, ¶16.) The Amended Complaint alleges that "similar racial incidents continued to occur in Detroit as well." (*Id.*) Plaintiff does not provide the dates or approximate dates of these incidents.

One alleged incident at the Taproom involved a discussion of Detroit's Ex-Mayor Kwame Kilpatrick, where a white co-worker allegedly stated that he needed to explain the meaning of "head n***** in charge" to Plaintiff. (*Id.* at PgID 76, ¶10.) Plaintiff complained to human resources employee Marguex Bouwkamp and General Manager Dominic Ryan, who "wrote up" the employee but allegedly did nothing further. (*Id.* at PgID 78, ¶19.) Plaintiff later "heard" that this employee was "still making racist comments about how 'dark' the [T]aproom's cliental [sic] is." (*Id.* at PgID 78, ¶20.) Plaintiff also stated that he was given projects to complete without "any" budget and was "blamed" for delays when

4

events were moved without notice. (*Id.* at PgID 79, ¶22.) Again, no dates were provided for these alleged events.

Plaintiff planned to take the day off from work on June 1, 2018 and drive to Founders in Grand Rapids to discuss his complaints, but on May 31, 2018, he was dissuaded by Ryan from taking the day off because Plaintiff needed to finish an "ongoing" project. (*Id.* at PgID 79, ¶¶23-24.) During that meeting, Plaintiff "explicitly" explained to Ryan that:

> …he scheduled the day off so that he could discuss his treatment due to his race and the racist incidents he had witnessed with Founders' Human Resources personnel in person. Plaintiff also expressed his frustration that [Founders] continued to employ the employee who had said the word "n*****" and continues to make other racist comments. (*Id.* at ¶14.) Plaintiff stated to GM Ryan that he did not feel comfortable working alongside the employee.

(*Id.* at PgID 80, ¶25.) Plaintiff did not take June 1, 2018 as a day off from work to go to Founders' Grand Rapids location "for fear of retaliation." (*Id.* at PgID 80, ¶26.)

On or around the following Tuesday – the next day that Plaintiff was scheduled to work – Ryan called Plaintiff into his office, where Human Resources Director Audrey Strieter was also present. (*Id.* at PgID 80, ¶27.) Plaintiff assumed the meeting was to discuss his concerns, but instead he was terminated and presented with a separation agreement, which he refused to sign. (*Id.*)

On September 26, 2018, Plaintiff filed a charge with the EEOC ("Charge") alleging discrimination based on Race, Color, National Origin, and Retaliation, describing the May 2018 use of racially discriminatory language, his complaints, and Founders' termination of

5

his employment a week thereafter.[1] (Def.'s Am. Mot., ECF #21-1, Ex. A, PgID 228.) Plaintiff received a Notice of Right to Sue on October 1, 2018. (Am. Compl., ECF #10, PgID 80, ¶29.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a summary judgment motion where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and

---

[1] The Charge states that Plaintiff was terminated on May 30, 2018, after meeting with Ryan on May 23, 2018. (Def.'s Am. Mot., ECF #21-1, Ex. A, PgID 228.)

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 323). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

"The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal citations and quotation marks omitted). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue

7

for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote and internal quotations omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). At the same time, plaintiff must produce enough evidence to allow a reasonable jury to find in his favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis*, 226 F.3d at 511. Plaintiff cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir. 2008). Plaintiff must show

probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004)).

All evidence submitted in opposition to a motion for summary judgment must ultimately be capable of being presented in a form that would be admissible at trial:

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid*. It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e).

*CareSource*, 576 F.3d at 558-59 (internal citations omitted).

A court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## IV. ANALYSIS

The sole issue at bar is whether the contractual period of limitations in the employment agreement between Founders and Plaintiff acts to bar any of Plaintiff's claims

9

related to or arising out of his employment with Founders prior to February 23, 2018.²
Founders concedes that Plaintiff timely filed his discriminatory and/or retaliatory termination claims contained in Counts I, III, VI, VI, VII, and VIII, but moves to dismiss Counts II and V for failure to promote and any other claims related to or arising out of alleged conduct occurring prior to February 23, 2018 (180 days before Plaintiff filed the instant case) as time-barred.

**A. The EEOC Charge**

As a preliminary matter, the September 26, 2013 EEOC Charge complains only of events occurring on and around May 30, 2018, *i.e.*, Founders' alleged discriminatory and retaliatory termination of Plaintiff. On the EEOC Charge, Plaintiff indicated the "DATES DISCRIMINATION TOOK PLACE" "Earliest" date as "05-30-2018" and the "Latest" date as "05-30-2018," the date Plaintiff stated he was terminated. (Def.'s Am. Mot. ECF #21-1, Ex. A., PgID 228.) Plaintiff did not check the box next to "Continuing Violation." (*Id.*) The particulars of the Charge also indicate that it relates to the alleged discriminatory and retaliatory termination only:

> I was an employee of [Founders].
>
> In or around May 2018, I reported an incident to both management and human resources regarding an employee's freely use [sic] of a racist epithet term. Although the employee was given a verbal warning, the bad behavior continued. I again reported the incident to management and human resources

---

² Contrary to Plaintiff's assertion, Founders has not requested any limitations on discovery in its Motion, so the Court will not address Plaintiff's arguments as to discovery. (*See* Pl.'s Resp. Dec. 21, 2018, ECF #17, PgID 153.)

> on or about May 23, 2018. On or about May 30, 2018, I was terminated from my position.
>
> I believe I was retaliated and discriminated against because of my race (African American), color, national origin (American) and for participating in a protected activity, in violation of Title VII….

(*Id.*)

In the Charge, Plaintiff dates the illegal conduct as the day he was terminated – May 30, 2018. He states he believes he was retaliated and discriminated against on the basis of race and for participating in protected activity, on May 30, 2018. The narrative includes conduct that occurred on earlier dates, but the Charge clearly complains only of discriminatory and retaliatory termination.

Plaintiff received the Notice of Right to Sue on October 1, 2018 and amended his Complaint to include two Counts under Title VII on October 12, 2018. (Am. Compl. Oct. 12, 2018, ECF #10, PgID 80.) Because Plaintiff complied with the Agreement, which stated that the time limitations "for lawsuits requiring a Notice of Right to Sue from the EEOC, [is] within 90 days after the EEOC issues that Notice," the claims contained in Counts VII and VIII as brought in the Charge may proceed.

**B. Knowing, Intelligent and Voluntary Waiver**

Plaintiff argues that his agreement to the claim limitation provision was not "knowing, intelligent and voluntary" so as to be effective against him. (Pl.'s Resp. Dec. 21, 2018, ECF #17, PgID 154.) The contractual limitation, "Limitation on Claims," in the Agreement between Founders and Plaintiff states:

11

> By accepting or continuing employment at the Company, you agree that any action or suit arising out of your employment or termination of employment, including but not limited to, claims arising under state, federal or local statutes or ordinances, must be brought within the following time periods: (a) for lawsuits requiring a Notice of Right to Sue from the EEOC, within 90 days after the EEOC issues that Notice; or (b) for all other lawsuits, (i) within 180 days of the event(s) giving rise to the claim, or (ii) the time limits specified by statute, whichever is shorter. I waive any statutes of limitation that exceed this time limit.

(Answer to Am. Compl. Oct. 22, 2018, ECF #13-1, Ex. A., PgID 118.)

Parties to a contract may agree to a shortened period of limitations so long as it is reasonable. *See Order of United Commercial Travelers Am. v. Wolfe*, 331 U.S. 586, 608 (1947) ("It is well established that...a provision in a contract may validly limit, between the parties, the time for bringing an action...less than that prescribed in the general statute of limitations, provided the shorter period itself shall be a reasonable period."); *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 455 (6th Cir. 2009); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357-59 (6th Cir. 2004) ("[C]ontracting parties may agree to an abbreviated statute of limitations so long as it is reasonable."); *Smithson v. Hamlin Pub*, No. 15-cv-11978, 2016 WL 465564, at *3 (E.D. Mich. Feb. 8, 2016).

An abbreviated limitations period within an application for employment "is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action; (2) the time is not so short as to work a practical abrogation of the right of action; and (3)

the action is not barred before the loss or damage can be ascertained." *Thurman*, 397 F.3d at 357.[3]

The Court finds that the contractual limitation in this matter is reasonable. Both the Sixth Circuit and the Michigan Supreme Court have expressly held that there is nothing inherently unreasonable about a six-month claims limitation period. *See Thurman*, *supra* (Sixth Circuit held that a 180-day contractual period of limitations set forth in job application was reasonable and barred state law discrimination claims as well as federal race discrimination claim brought under Section 1981); *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988) (employment contract barred ELCRA suit); *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005); *Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234, 243-44 (2001).

Further, as Founders points out, Plaintiff signed the Agreement six days before he commenced employment, providing him ample time to review the Agreement with an attorney and/or decide to pursue other avenues of employment if he so chose. He does not state in his affidavit that he did not read or understand the Agreement, *see Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 668 (6th Cir. 2003), or that Founders denied a request for a copy of the Agreement prior to the commencement of his employment. (Dec. 20, 2018 Aff. of Tracy Evans, ECF #17-3, PgID 170, Pl.'s Resp. Ex. B.) Plaintiff could

---

[3] The factors Plaintiff cites are typically used to evaluate whether a forum waiver was proper. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003).

have reviewed the Agreement at any point during his employment, as a copy of the Agreement was located in his personnel file. He does not state that he was coerced into signing the document. Lastly, although the "Limitation on Claims" provision is located on the first page of "Appendix A – Confidentiality Agreement," it is not "obscured and buried" as Plaintiff claims. (Pl.'s Mot. ECF #17, PgID 155.) It is clearly set off, labeled and underlined in Paragraph B as <u>Limitation on Claims</u>.

Plaintiff cites *Alonso v. Huron Valley*, 375 F. App'x 487, 492-94 (6th Cir. 2010), which predominantly discusses waiver of forum. In *Alonso*, the plaintiffs were given no information about the forum where they were to dispute their claims as opposed to court. *Id.* Their claims were to be decided by a "Grievance Review Board," about which they received no details until one month after they were hired. *Id.* at 493. The court determined that the plaintiffs "cannot be said to have knowingly and voluntarily waived their right to a judicial forum when they were not informed of the alternative procedures until a month after they began working for [the defendant]." *Id.* at 494. The plaintiffs also signed a contractual limitations waiver, which was tied to the Grievance Review Board procedure, so the court found that waiver was invalid as well. *Id.*

The facts are not similar to this case. *Alonso* is distinguishable because the court there was concerned about the lack of information regarding the mysterious Grievance Review Board – the plaintiffs did not know what they were agreeing to until a month after they signed the agreement (and even then, it remained unclear). Here, the language was

straightforward, Plaintiff had time to obtain and review it with an attorney if he desired prior to commencing employment, and there were no undecipherable or undefined terms within the provision.

**C. Enforceability of the Agreement**

Plaintiff argues that the Agreement is not enforceable because although he does not dispute signing the Agreement, he does not remember signing it five years prior to filing the instant action. (Evans Aff. Dec. 20, 2018, ECF #17-3, PgID 170, Pl.'s Resp. Ex. B.) This argument is not persuasive. *See, e.g.*, *Smithson v. Hamlin Pub*, No. 15-CV-11978, 2016 WL 465564, at *2-3 (E.D. Mich. Feb. 8, 2016) (finding contractual limitation in employment agreement enforceable 12 years after execution). Nor is the Agreement unconscionable because, as discussed above, a six-month limitation is reasonable. Further, when an individual "voluntarily agrees to something in an attempt to obtain employment, they are not being 'forced' to do anything in any true sense of the word." *EEOC v. Frank's Nursery & Crafts*, 966 F. Supp. 500, 504 (E.D. Mich. 1997), *rev'd on other grounds*, 177 F.3d 448 (6th Cir. 1999).

The fact that the copy of the Agreement attached to the Answer to the Amended Complaint (ECF #13-1, PgID 120) is not counter-signed by Founders also does not render it unenforceable. Under Michigan law, the intention of the parties governs when fewer than all of the parties to a contract sign a contract:

> In cases where a writing which purports to evidence a contract between several named persons has been signed by less than all those named, it

> is often found that the signers did not intend to become contractually bound until all the apparent parties sign and deliver the writing. This is not, however, immutable doctrine.... [T]hose who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional, or judicial experience.

*McLaughlin v. Innovative Logistics Grp.*, No. 05-72305, 2005 WL 2346418, at *2 (E.D. Mich. Sept. 26, 2005) (citing *Wiegand v. Tringali*, 22 Mich. App. 230, 233-234 (1970)). In *McLaughlin*, the plaintiff signed an employment agreement and began employment with the defendant employer. No one signed the agreement as a representative of the defendant employer. As in this case, the defendant employer never asserted that it did not intend to be bound despite the lack of signature, and its actions, including allowing the plaintiff to begin employment and paying the plaintiff's wages, demonstrated an intent to be bound. Further, the agreement in *McLaughlin* did not expressly provide that all signatures were required for the contract to be valid, nor has that been alleged here. Similarly, Founders has sufficiently demonstrated its intent to be bound by the Agreement, and the Court finds that the Agreement is enforceable.

**D. Lilly Ledbetter Fair Pay Act**

Plaintiff attempts to salvage his untimely failure to promote claims by arguing that each paycheck constituted a violation of the Lilly Ledbetter Fair Pay Act ("LLA"), 42 U.S.C. § 2000e-5(e)(3)(B). He cites unpublished cases from outside of this jurisdiction while ignoring law within this Circuit that clearly undermines his position. For example,

in *Morrow v. L&L Prods, Inc.*, 945 F. Supp. 2d 835, 848 (E.D. Mich. 2013), the district court clarified that the LLA only applies to "discrimination in compensation" claims, and that "[t]he LLA does not exempt a plaintiff from pursuing claims upon discrete acts other than pay, such as an alleged failure to promote…." *See also, e.g., Gee v. Liebert Cor*p., 58 F. App'x 149, 153 (6th Cir. 2003) ("The continuing violation doctrine does not permit a plaintiff to bring otherwise time-barred actions for a failure to promote.") (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Here, the alleged failure to promote was a discrete act that fell outside of the contractual limitations period and is not a discrimination in compensation claim. Therefore Counts II and V are dismissed.

## V. CONCLUSION

Based on the reasons stated above, the Court GRANTS Defendant Canal Street Brewing Co., LLC d/b/a Founders Brewing Company's Motion for Partial Summary Judgment, dismissing with prejudice: Counts II and V for failure to promote; any claims for discriminatory or retaliatory conduct under ELCRA and/or 42 USC §1981 in Counts I, III, IV, and VI occurring prior to February 23, 2018; and any claims under Title VII in Counts VII and VIII other than discriminatory and retaliatory termination.

IT IS SO ORDERED.

Dated: April 4, 2019                           s/Paul D. Borman
                                               Paul D. Borman
                                               United States District Judge